UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TONY GLADNEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17-CV-971-JD-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Tony Gladney, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (MCF 17-08-448) where a Disciplinary Hearing Officer (DHO) found him guilty of attempting to traffick in violation of Indiana Department of Correction (IDOC) policies A-111 and A-113 on October 12, 2017. ECF 1 at 1. As a result, he was sanctioned with the loss of 120 days earned credit time and a one-step demotion in credit class. *Id.* The Warden has filed the administrative record and Gladney filed a traverse. Thus this case is fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418

U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985). In his petition, Gladney argues there are three grounds which entitle him to habeas corpus relief.

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, Gladney was found guilty of attempting to traffic in violation of IDOC policies A-111 and A-113. Specifically, IDOC offense A-111 prohibits inmates from

"[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf. The Disciplinary Code for Adult Offenders defines "attempt" as "[p]lanning to do something that would be a violation of the[] administrative procedures or any Department or facility rule, procedure or directive if the act had actually been committed or when an offender commits acts which showed a plan to violate the[] administrative procedures or a Department or facility rule, procedure, or direction when the acts occurred." Disciplinary Code for Adult Offenders. http://www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders_6-1-2015.pdf. Additionally, IDOC offense A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." Appendix I, *supra*. And "[a] person who, without the prior authorization of the person in charge of a penal facility . . . , knowingly or intentionally delivers . . . an article to an inmate . . . of the facility . . . commits trafficking with an inmate, a Class A misdemeanor." Ind. Code § 35-44.1-3-5(b)(1),(3).

The Conduct Report charged Gladney as follows:

On August 24, 2017 at approximately 9:30 am I, J. Stoll, received an envelope from the mailroom as part of an investigation pertaining to sprayed letters coming in through the mail. The letter was two pages and appears to have been sprayed, then dried, and had a chemical smell on it. The envelope was addressed to Tony Gladney 168392 and the return address read Casey Moore. I, J. Stoll, did hear various phone calls made between June 15, 2017 and August 19, 2017 that during these phone calls

3

> Tony Gladney 168392 and his girlfriend, Casey Moore had a conversation that led me to believe that Casey Moore is sending in sprayed mail and Tony Gladney 168392 was expecting it. During one of the phone calls made on August 16, 2017 Casey Moore told Offender Gladney 168392 that she sent it out and it was two pages. Casey Moore says that the "car" was drenched and she had to use a blow dryer but it looks good.

ECF 5-1 at 1.

Officer Stoll provided a statement about his investigation of the incident:

> During the course of Department of Investigation and Intelligence investigation I found that Tony Gladney 168392 conspired with his girlfriend, Casey Moore, to have letters mailed in to him with the pages sprayed.

ECF 5-2 at 1.

The DHO reviewed the audio recordings of the phone calls between Gladney and Moore and provided a written summary of that evidence:

> On 10/05/2017 at the approx. time of 1:15 pm I (J. Prater) went to the office of J. Stoll PC5 to listen to phone calls made by or on behalf of offender Gladney, Tony 168392 to a Casey Moore who is his girlfriend. During the calls it is clear that offender Gladney and Moore are talking about [a] money transaction. On one call that another offender makes to his daughter offender Gladney can be heard in the background telling him what to say. He tells them what needs [to be] sprayed on the sheets of paper and each sheet is worth $500 dollars, this is supposed to be relayed to Moore then mailed to offender Gladney.
>
> This is only a short summary of the phone calls made and a complete record of all the calls can be gotten from J. Stoll PC5.

ECF 5-3 at 1. After considering the phone calls and underlying facts in this case, the DHO concluded that the two-page letter Moore sent to Gladney, which Moore had doused with a household chemical—Raid—constituted evidence of Gladney's attempt

to traffic an unauthorized item or article containing a chemical into the prison that would later be sold to an inmate for as much as $500 and ultimately smoked or eaten by that inmate to get "high."

In his first ground, Gladney argues his due process rights were violated because he was denied the right to call a witness to testify at his hearing. ECF 1 at 2. As an initial matter, however, Gladney has not met the exhaustion requirement contained in 28 U.S.C. § 2254(b), as to this issue. To have exhausted his administrative remedies, Gladney must have properly presented the issue at each administrative level. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). However, notwithstanding Gladney's failure to exhaust, the court may deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Turning to the merits of his claim, a prisoner has a right to call witnesses and present documentary evidence in a prison disciplinary proceeding. *Wolff*, 418 U.S. at 566. Gladney's right to present evidence was satisfied. During his screening, Gladney had the opportunity to request evidence in his defense. However, he never requested any witnesses. ECF 5-4 at 1. To the extent Gladney claims he was never informed of the identify of the person with whom he was trafficking, he is incorrect on that point. The conduct report states that he was attempting to traffick with his girlfriend, Casey Moore, whose name appears five times in the report. ECF 5-1 at 1. However, to the

extent, Gladney may be referring to the identity of the offender referenced in the DHO's written summary of the phone calls between Gladney and Moore (ECF 5-3 at 1), he never requested the identity of the offender. ECF 5-4 at 1. And because he spoke on the phone with the offender, Gladney himself knew the offender's identity. Therefore, even if Gladney had timely requested witnesses and his request had been denied, that error would have been harmless because there is no indication in the record how the testimony of these two witnesses, who conspired with him to traffic contraband into the prison, "might have aided [his] defense." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Furthermore, in his traverse, Gladney for the first time claims he requested the audio recording of his phone conversation in which he "t[old] someone to traffic." ECF 11 at 2. Inmates have a right to present relevant, exculpatory evidence in their defense. *Miller v. Duckworth*, 963 F.3d 1002, 1005 (7th Cir. 1992). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Here, Gladney had a right to present relevant, exculpatory evidence, however, the audio recordings of his phone conversations contain incriminating evidence. ECF 7 at 1-6. Given the context of the discussions between Gladney and Moore, there is nothing in these phone conversations that are exculpatory or helpful to Gladney as they detail his attempts to traffic unauthorized letters with chemicals sprayed on them into the prison. Furthermore, the court has reviewed the transcripts of the recorded phone

6

conversations and notes Gladney's conversations are not exculpatory as they evidence his participation in trafficking activities. *Jeffries v. Neal*, 737 Fed. Appx 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs.").

To the extent the DHO might have erred in not releasing the audio recordings of Gladney's phone conversations to him, that error was harmless. Here, the court notes that while the DHO or prison officials could have possibly released the audio recordings of the phone conversations to Gladney, he has not shown that the denial of that evidence resulted in actual prejudice rather than harmless error. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Because Gladney participated in the phone conversations, he was already aware of the contents of those conversations. In other words, he has not shown that being able to review his own phone conversations would have provided him with anymore information than what he had already known. Therefore, Gladney's first ground does not identify a basis for granting habeas corpus relief. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence).

In the second ground, Gladney asserts his due process rights were violated because prison officials refused to chemically test the two-page letter he received from his girlfriend. ECF 1 at 2, ECF 5-4 at 1. He claims the letter should have been tested to find out what substance was on the letter. *Id.* However, the prison's refusal to chemically test the letter did not violate Gladney's due process rights. "Prison

7

disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. While prisoners have a right to submit relevant exculpatory evidence, they do not have the right to create evidence which does not already exist because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." *Id. See also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) ("Freitas was not entitled to a polygraph examination . . . ."); *Rhatigan v. Ward*, 187 Fed. Appx. 889, 890-891 (10th Cir. 2006); and *Arthur v. Ayers*, 43 Fed. Appx. 56, 57 (9th Cir. 2002) (inmates were not entitled to laboratory testing of substances). Furthermore, in the report of disciplinary hearing, the DHO noted that since the chemical sprayed on the letter was a "look-a-like" substance, it did not meet the criteria for testing. ECF 5-7 at 1. Therefore, Gladney's second ground does not identify a basis for granting habeas corpus relief either.

In his third ground, Gladney argues there was insufficient evidence for the DHO to find him guilty of attempting to traffic contraband into the prison. ECF 1 at 3. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In the conduct report, Officer Stoll, who was investigating sprayed letters coming in through the mail, documented his receipt of an envelope addressed to Gladney from Moore on August 24, 2017. ECF 5-1 at 1. After opening the envelope, Officer Stoll found a two-page letter which looked and smelled as if it had been sprayed with a chemical of some

sort. *Id*. As part of his investigation, Officer Stoll listened to a number of phone calls between Gladney and Moore and, in one conversation, he heard Moore suggest through "code" that she would be sending Gladney sprayed mail. *Id*. Given Officer Stoll's conduct report documenting Gladney's attempt to have Moore deliver an unauthorized letter—doused in chemicals—into the prison facility, coupled with the multiple phone calls evidencing Gladney's and Moore's attempts to traffic contraband into the prison, there was more than "some evidence" for the DHO to find Gladney guilty of violating offenses A-111 and A-113. While Gladney claimed he was never involved in trafficking activities, the DHO was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). Therefore, the DHO's finding that Gladney was guilty was neither arbitrary nor unreasonable in light of these facts.

If Gladney wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Tony Gladney's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on December 14, 2018

>	/s/ JON E. DEGUILIO
> JUDGE
> UNITED STATES DISTRICT COURT